## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DELONDA MCCULLUM,

   Plaintiff,   Case No.

v.

         Hon.

UNITED WAY FOR
SOUTHEASTERN MICHIGAN,

   Defendant.

---

Noah S. Hurwitz (P74063)
Colin H. Wilkin (P86243)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
340 Beakes St. STE 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
colin@hurwitzlaw.com

---

## COMPLAINT AND JURY DEMAND

Plaintiff Delonda McCullum ("Plaintiff"), by and through her attorneys,

HURWITZ LAW PLLC, states the following for her Complaint against Defendant

United Way for Southeastern Michigan ("Defendant").

## INTRODUCTION

1. Plaintiff Delonda McCullum submitted a religious accommodation

request for exemption from Defendant's COVID-19 vaccine mandate and was

terminated for not having "sincerely held religious beliefs" on August 12, 2022.

Despite the Equal Employment Opportunity Commission ("EEOC") telling employers to "ordinarily assume that an employee's request for religious accommodation is based on sincerely held religious belief, practice, or observance," Defendant did the opposite, telling its employees that "verses from scripture, notes from pastors or leaders in a church, and other forms of evidence that *are not part of the doctrine of your church or religious group*, will not be sufficient" to establish a sincerely held religious belief.  Shockingly, Defendant granted Plaintiff's religious accommodation request before rescinding the approval and terminating her.  Instead of respecting Plaintiff's religious beliefs, Defendant implemented an arbitrary test for religiosity that flies in the face of both common sense and well-established law. Defendant callously ignored the EEOC's warning that employers "should not assume that an employee is insincere simply because some of the employee's practices deviate from the commonly followed tenets of the employee's religion, or because the employee adheres to some common practices but not others" and terminated Plaintiff based on Defendant's subjective standard of religiosity.

## PARTIES AND JURISDICTION

2.     Plaintiff is an individual residing in Wayne, Michigan.

3.     Defendant is a domestic nonprofit organization with a principal place of business located at 3011 W. Grand Blvd, Ste. 500, Detroit, MI 48202.

4.     Plaintiff's claims arise out of Defendant's violation of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e and the Elliott-Larsen Civil Rights Act ("ELCRA") 28 U.S.C. § 1367.

5.     This Court has general federal question jurisdiction pursuant to 28 U.S.C. § 1331.

6.     This matter is not subject to arbitration.

7.     Venue is proper under 28 U.S.C. § 1391 because this is the judicial district where a substantial part of the events giving rise to the claims occurred.

8.     Plaintiff received an Equal Employment Opportunity Commission ("EEOC") right to sue letter on March 6, 2025.

## FACTUAL ALLEGATIONS

9.     Plaintiff was employed by Defendant as a Connect4Care Specialist from September 21, 20015 until her termination effective August 12, 2022.

### Defendant's Mandatory Vaccine Policy

10.     In November 2021, Defendant announced that they would be mandating the COVID-19 vaccine in the future.

11.     However, it was not until May 2022 when Defendant announced a mandatory COVID-19 vaccine policy for "all team members."

12.     Defendant required employees to be vaccinated or face termination.

13.     Defendant gave employees until July 8, 2022 to provide Defendant with Religious Accommodation requests.

14.     In May 2022 Defendant officially announced their COVID-19 Vaccine Mandate which stated that "[a]ll team members are required to receive vaccinations as determined by the Executive Leadership unless a reasonable accommodation is approved. Team members not in compliance with this policy will be placed on unpaid leave until their employment status is determined by the People and Culture Department. ***Weekly COVID testing will be required for those with an approved reasonable accommodation***."

15.     Defendant's Executive Director of People & Culture,  Lara Keathley, informed employees that "approved Accommodations for Religious reasons must be supported by the following: Evidence from your church's or religious group's doctrine showing that the beliefs are against the COVID-19 vaccination"

16.     Ms. Keathley then took it upon herself to include the definition of "Religious Doctrine" by stating that it is "[t]he written body of teachings of a religious group that are generally accepted by that group church doctrine, creed, and/or gospel[.]"

17.     Ms. Keathley told employees to "***please note that verses from scripture, notes from pastors or leaders in a church, and other forms of evidence that are not part of the doctrine of your church or religious group, will not be sufficient***."

18.     Defendant never required visitors or vendors to be vaccinated.

19.    Defendant's accommodation process was arbitrary and defied well established law.

20.    Ms. Keathley's novel "Religious Doctrine" test is *per se* religious discrimination.

### Plaintiff's Religious Accommodation Request

21.    Plaintiff is a born-again Christian who acknowledges Jesus Christ as her Lord and Savior.

22.    Plaintiff has been a Christian for 41 years.

23.    Plaintiff looks to the religious guidance of Jesus Christ to be saved.

24.    Plaintiff seeks to make all decisions, especially those regarding vaccination and other medical decisions, through prayer.

25.    Plaintiff was denied accommodation to the vaccine mandate and was forced into the horrible position of choosing between vaccination or termination:

> Forcing individuals to choose between their faith and their livelihood imposes an obvious and substantial burden on religion . . . vaccine mandates . . . presents a crisis of conscience for many people of faith.  It forces them to choose between the two most profound obligations they will ever assume—holding true to their religious commitments and feeding and housing their children.  To many, this is the most horrifying of Hobson's choices.

*Sambrano v. United Airlines, Inc.*, 19 F.4th 839, 841 (5th Cir. 2021).

26.    During the COVID-19 pandemic, Plaintiff's sincerely held religious beliefs were strengthened and she turned to the Bible for guidance and reassurance.

27.     Plaintiff prayed to God about whether to become vaccinated against COVID-19. Plaintiff received a message from God to not receive the vaccine.

28.     Plaintiff trusts in God to bring her through any hardship in life.

29.     Plaintiff regularly prays for direction on many aspects of her life.

30.     In November 2021, Plaintiff provided Defendant with a religious accommodation request prior to Defendant's implementation of the COVID-19 Vaccine Mandate.

31.     Plaintiff submitted this request because she became aware that Defendant would be implementing the vaccine mandate in the future.

32.     On November 9, 2021, Defendant *granted* Plaintiff's religious accommodation request.

33.     Defendant's Executive Director of People and Culture, Lara Keathley, told Plaintiff that "At this time we have approved your accommodation request regarding the COVID-19 vaccination."

34.     However, on March 21, 2022 Ms. Keathley reached out to Plaintiff "to inquire about [her] current vaccination status.

35.     Ms. Keathley told Plaintiff that "an accommodation for you was approved based on your role and our ability to remain 100% remote about six months ago. As we work toward a hybrid work environment where folks will be working in office and remote, it is important to understand if you have been vaccinated since

our last discussion on the matter."

36.     Plaintiff responded to Ms. Keathley's email by providing her with her "unvaccinated" status.

37.     In May 2022, Defendant officially announced their COVID-19 vaccination mandate.

38.     In response to this announcement, Plaintiff submitted a second accommodation request which outlined her sincerely held religious beliefs against vaccination

39.     Specifically, Plaintiff informed Defendant that her opposition to the COVID-19 vaccine stems from the vaccines use of Fetal Cell Lines.

40.     Plaintiff informed Defendant that "[t]he Bible teaches that 'thou shalt not kill.'"

41.     Plaintiff stated that "[s]ome of the most common vaccines include live attenuated viruses cultured in aborted fetal cell lines."

42.     As a Christian, Plaintiff is against abortion and believes that receiving the COVID-19 vaccine would go against her religious beliefs for this reason.

43.     Following Plaintiff's submission, Defendant had a short conversation with her where they denied her request and gave her just ten days to submit additional information.

44.     Plaintiff complied with Defendant's request and submitted another

letter outlining her sincerely held religious beliefs.

45.     On June 16, 2022, Plaintiff received notification from Ms. Keathley, that "until further notice, you will not be permitted to the office or UWSEM events."

46.     On July 15, 2022, despite Plaintiff providing **her** religious beliefs to Defendant Ms. Keathley told Plaintiff that her request could not be approved because "these documents however, are not part of a doctrine of your religion or church by-laws[.]"

47.     Ms. Keathley told Plaintiff that her "statement [she] provided is a statement and does not meet the requirement."

48.     Ms. Keathley then said that "if the statement came from a doctrine or set of by-laws, please share that document for review."

49.     Plaintiff, shocked by Ms. Keathley's apparent misunderstanding of the law, complied with her request to provide additional information once again.

50.     Plaintiff submitted a "Vaccine Mandate Statement" from Northwoods Church which stated: "it is the heart of Northwoods Church leadership to express our support both to those who have sought the Lord and feel led to be vaccinated and to those who have sought the Lord and feel led not to receive the vaccine."

51.     The statement also stated that "[w]e believe that believers in Jesus Christ can, and do, receive direct and specific communication from God through the Holy Spirit—giving direction, life, healing, and comfort (John 16:13)."

52.     Further, Northwoods stated that "[w]e believe that the Constitution of the United States provides the freedom and right for a person to follow their religious beliefs and convictions and that the limitation of that right is a direct assault on the fabric of families, freedom, education, employment, and, ultimately, our country. We believe that recent vaccination mandates are an infringement of those rights. We choose to respect these God-given values and choose not to throw them out due to the wave of fear, division, and anxiety."

53.     On July 25, 2022 in response to Plaintiff's third supplementation, Ms. Keathley responded by stating that "a word document is not an official document and could be written by anyone so we are unable to use this to support an accommodation."

54.     It was not clear to Plaintiff whose beliefs Ms. Keathley was interested in at this time.

55.     At some point during this process, Ms. Keathley also told Plaintiff that she "quickly skimmed the full document provided."

56.     Ms. Keathley then told Plaintiff that in order to approve her religious accommodation request Plaintiff was required to provide "evidence that [her] church is against vaccination" otherwise any statement that Plaintiff provided was simply a "personal belief."

57.     Ms. Keathley then requested that Plaintiff provide Defendant with her

church's by-laws.

58.    Plaintiff complied with this bizarre request.

59.    Despite all this, Plaintiff apparently did not meet Ms. Keathley's subjective standard for a sincere religious belief and her religious accommodation request was ultimately denied on July 28, 2022.

60.    On July 29, 2022, UWSEM told Plaintiff that she should take the weekend to think about her decision to not receive the COVID-19 vaccine.

61.    The next week Plaintiff requested to work 100% remote to avoid the mandate; however, Defendant informed Plaintiff that even remote, out-of-state, employees were being required to receive the vaccine.

62.    Defendant denied Plaintiff's request to work remotely.

63.    Plaintiff, maintaining her sincerely held religious beliefs, did not receive the vaccine, and was given a termination letter on August 2, 2022.

64.    Plaintiff's last day was August 12, 2022.

65.    The religious accommodation process mandates "bilateral cooperation" between employer and employee. *Ansonia Bd. of Educ. v. Philabrook*, 479 U.S. 60, 69 (1986).

66.    No such "bilateral cooperation" occurred during Defendant's interrogation of its employees or otherwise during the process.

67.    The United States Equal Employment Opportunity Commission tells

employers that a prototypical example of reasonable accommodation to the vaccine is being "given the opportunity to telework." U.S. Equal Empl. Opportunity Comm'n, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (May 28, 2021). "If the employer denies the employee's proposed accommodation, the employer should explain to the employee why the preferred accommodation is not being granted." *Id*. (Mar. 1, 2022).

68.     Defendant directly discriminated against Plaintiff.

69.     "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions," *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 926 (6th Cir. 1999), and "does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Johnson v. Kroger Co.,* 319 F.3d 858, 865 (6th Cir. 2003).

70.     "An existing policy which itself constitutes discrimination constitutes direct evidence of discrimination." *Ramsey v. City & County of Denver,* 907 F.2d 1004, 1008 (10th Cir. 1990).

71.     "A facially discriminatory employment policy or a corporate decision maker's express statement of a desire to remove employees in the protected group is direct evidence of discriminatory intent." *Nguyen v. City of Cleveland*, 299 F.3d

11

599, 562 (6th Cir. 2000).

72.    Plaintiff was an excellent performer of her job duties.

73.    Title VII's statutory definition of "religion" includes "all aspects of religious observance and practice, as well as belief."  42 U.S.C. § 2000e(j).

74.    The U.S. Equal Employment Opportunity Commission ("EEOC") advises employers to "ordinarily assume that an employee's request for religious accommodation is based on sincerely held religious belief, practice, or observance." U.S. EQUAL EMPL. OPPORTUNITY COMM'N, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (May 28, 2021).

75.    An individual's testimony about his or her belief "must be given great weight" and is enough to demonstrate sincerity. *Seeger*, 380 U.S. at 184 (1965).

76.    Plaintiff's religious conviction is highlighted by the fact she remained unvaccinated in the face of termination, losing her livelihood in the process.

**Defendant Did Not Base Its Decision on Undue Hardship, Nor Could It Establish Undue Hardship**

77.    The prohibition against religious discrimination imposes a "duty" on employers to accommodate the sincere religious observances of employees, absent a showing of "undue hardship."  *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977).

78.    An employer does not satisfy its burden of proving undue hardship "merely by showing that an accommodation would be bothersome to administer."

*Draper v. United States Pipe & Foundry Co.*, 527 F.2d 515, 520 (6th Cir.1975).

79.    Defendant cannot allege undue hardship when other employees performing similar job duties were granted religious and medical accommodations to the vaccine.

80.    Similarly, Defendant's vaccine mandate stated that employees with an approved reasonable accommodation would be subjected to "weekly COVID testing."

81.    Plaintiff never objected to weekly testing yet Defendant still denied her request solely based on their belief that Plaintiff's religious beliefs were not sincere.

## COUNT I
### Violation of Title VII, 42 U.S.C. § 2000e, *et seq*.
### <u>RELIGIOUS DISCRIMINATION – FAILURE TO ACCOMMODATE</u>

82.    Plaintiff restates the foregoing paragraphs as set forth fully herein.

83.    At all times relevant hereto, Plaintiff was an employee and Defendant was her employer for the purposes of 42 U.S.C. § 2000e, *et seq*.

84.    Title VII of the Civil Rights act of 1964, 42 U.S.C. § 2000e *et seq*., makes it unlawful for an employer to fail or refuse to reasonably accommodate the religious beliefs and practices of an employee or prospective employee.

85.    Title VII prohibits an employer from discriminating against an employee "because of such individual's... religion." 42 U.S.C. § 2000e-2(a)(1).

86.    This "includes all aspects of religious observance and practice, as well

as belief, unless an employer demonstrates that [it] is unable to reasonably accommodate an employee's... religious observance or practice without undue hardship on the conduct of the employer's business." *Id*. § 2000e(j).

87.    After receiving an accommodation request, "the employer is obligated by law to engage in interactive process – a meaningful dialogue with the employee[.]" *Chevron Phillips Chem. Co.*, 570 F.3d at 621 (5th Cir. 2009).

88.    The employer must act in "good faith," *Id*., and the employee must "make a good faith attempt to satisfy his needs through means offered by the employer," *Brener v. Diagnostic Ctr. Hosp*., 671 F.2d 141, 146 (5th Cir. 1982).

89.    Title VII makes it unlawful for an employer to retaliate against an employee who engaged in protected activity.

90.    Plaintiff holds sincere *bona fide* religious beliefs that preclude her from receiving a COVID-19 vaccine.

91.    Plaintiff informed Defendant of those beliefs and requested religious accommodation from the vaccine mandate.

92.    Defendant refused to engage in the interactive process with Plaintiff regarding her religious accommodation requests.

93.    Under Title VII, Plaintiff can establish a *prima facie* case of religious discrimination based on a failure to accommodate by showing: (1) she has a *bona fide* religious belief that conflicts with an employment requirement; (2) about which

14

she informed the [Defendant]; and (3) she suffered an adverse employment action for failing to comply with the conflicting employment requirement. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986).

94.    Multiple accommodations could have been offered to Plaintiff.  They include mask wearing and periodic testing for COVID-19—the very same accommodations being offered to virtually every public and private employee in the State of Michigan.

95.    A "[r]easonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question." *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995).

96.    Defendant would not suffer undue hardship by granting Plaintiff an accommodation. 42 U.S.C. § 2000e(j).

97.    The issue became moot when Defendant failed to engage each employee in "a meaningful dialogue" about the accommodation request and learn whether an acceptable accommodation would impose undue hardship.  *Chevron Phillips Chem. Co.*, 570 F.3d at 621 (5th Cir. 2009).

98.    Instead, Defendant announced a one-size-fits all approach to accommodation that deprived Plaintiff of the conversation necessary to discover what accommodations were possible. *Bultemeyer v. Fort Wayne Cmty. Schs.*, 100

F.3d 1281, 1285 (7th Cir. 1996) ("courts should look for signs of failure to participate in good faith or failure by one of the parties to help the other party determine what specific accommodations are necessary" and "[a] party that fails to communicate... may also be acting in bad faith").

99.   Irrespective of the interactive process, Defendant failed to provide Plaintiff with reasonable accommodations for her religious beliefs.

100.   Defendant thereby discriminated against Plaintiff because of her religious beliefs.

101.   Defendant's failure to provide religious accommodations has harmed and will continue to harm Plaintiff.

102.   As a direct and proximate result of Defendant's violation of Title VII Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

103.   As a further direct and proximate result of Defendant's violation of Title VII, Plaintiff has been denied employment and placed in financial distress and have suffered a loss of earnings and benefits, and a loss of and impairment of their earning capacity and ability to work and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

104.   By failing to engage in the interactive process or offer any reasonable accommodation, Defendant's discriminatory actions were intentional and/or reckless and in violation of Title VII.

**COUNT II**
**Violation of Title VII, 42 U.S.C. § 2000e, *et seq*.**
**DISPARATE TREATMENT DISCRIMINATION**

105.   Plaintiff restates the foregoing paragraphs as set forth fully herein.

106.   "To assert a successful claim of religious discrimination . . . a plaintiff must either present direct evidence of discrimination, or, in the absence of direct evidence, present a prima facie case of indirect discrimination by showing (1) they were a member of a protected class, (2) they experienced an adverse employment action (3) they were qualified for the position, and (4) they were replaced by a person outside of the protected class or were treated differently than similarly situated employees."  Tepper v. Potter, 505 F.3d 508, 515 (6th Cir. 2007).

107.   Plaintiff espoused religious beliefs and is therefore a member of a protected class.

108.   Defendant directly discriminated against Plaintiff by terminating her after she stated her sincerely held religious beliefs that conflicted with Defendant's subjected standard of religiosity.

109.   Defendant allowed other unvaccinated employees without Plaintiff's same religious beliefs to be exempted from Defendant's vaccine mandate policy.

110.    Defendant prohibited Plaintiff from in-person work before terminating her employment.

111.    It is undisputed that Plaintiff was qualified for the position.

112.    Plaintiff was treated differently than similarly situated employees with different religious beliefs who were allowed to continue working despite not being vaccinated.

113.    Plaintiff was terminated and replaced with a person of different religious beliefs.

114.    Plaintiff can also proceed on a mixed-motive claim by demonstrating that her protected status was a motivating factor in her termination, even though other factors also could have motivated her discharge.

115.    "[A] plaintiff may prove a Title VII mixed-motive case by either direct or circumstantial evidence." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 398 (6th Cir. 2008).

116.    "[A] plaintiff need only present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that 'race, color, religion, sex, or national origin was a motivating factor for any employment practice.'" *Id.* (quoting *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101 (2003) (quoting 42 U.S.C. § 2000e–2(m)).

117.    Plaintiff has suffered emotional and physical distress, mental and

physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the denial of their requests and will so suffer in the future.

### COUNT III
### VIOLATION OF ELCRA, MCL 37.2101, *et seq.*
### DISPARATE TREATMENT AND INTENTIONAL DISCRIMINATION

118.    Plaintiff incorporates the foregoing paragraphs by reference herein.

119.    Plaintiff holds sincere religious beliefs that conflict with Defendant's COVID-19 vaccine mandate.

120.    Plaintiff informed Defendant how these sincerely held religious beliefs conflicted with Defendant's COVID-19 vaccine mandate.

121.    "To assert a successful claim of religious discrimination . . . a plaintiff must either present direct evidence of discrimination, or, in the absence of direct evidence, present a *prima facie* case of indirect discrimination by showing that the employee (1) was a member of a protected class; (2) experienced an adverse employment action; (3) was qualified for the position; and (4) was replaced by a person outside of the protected class or that the employee was treated differently than similarly situated employees." *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007).

122.    Defendant directly discriminated against Plaintiff based on termination after the employee espoused sincerely held religious beliefs that conflicted with

Defendant's policy.

123.   Defendant allowed other unvaccinated employees without Plaintiff's same religious beliefs to be exempted from Defendant's vaccine mandate policy.

124.   Plaintiff's sincerely held religious beliefs qualify the employee as a member of a protected class.

125.   Defendant permitted Plaintiff to work from home until her termination.

126.   Plaintiff was qualified for the position.

127.   Plaintiff was treated differently than similarly situated employees with different religious beliefs who were allowed to continue working despite being unvaccinated.

128.   Plaintiff was terminated and replaced with a person of different religious beliefs.

129.   Defendant also terminated Plaintiff based on Defendant's own subjective standard of religiosity, thus directly discriminating against Plaintiff's unique sincerely held spiritual beliefs.

130.   EEOC Guidance states that ("[t]he definition of 'religion' under Title VII protects both traditional and nontraditional religious beliefs . . . including those that may be unfamiliar to employers.")

131.   The law on religious discrimination states that religious beliefs need not

be "acceptable, logical, consistent or comprehensible to others" and the law "leaves little room for a party to challenge the religious nature of an employee's professed beliefs."). *E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 56 (1st Cir. 2002).

132.    Defendant defied the law when it determined that some religious beliefs of its employees were valid and while others were bogus.

133.    Again, Plaintiff can proceed on a mixed-motive claim by demonstrating that her protected status was a motivating factor in her termination, even though other factors also could have motivated her discharge.

134.    In discovery, Plaintiff will be able to investigate which types of religious beliefs Defendant found were acceptable and which types of religious beliefs Defendant discriminated against, thereby establishing evidence probative of discriminatory intent.

135.    Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the termination and will so suffer in the future.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff requests the following relief:

a.      Compensatory damages for monetary and non-monetary loss;

b.      Exemplary and punitive damages;

c.      Prejudgment interest;

d.      Attorneys' fees and costs; and

e.      Such other relief as in law or equity may pertain.

Respectfully Submitted,

HURWITZ LAW PLLC
/s/ *Noah S. Hurwitz*
Noah Hurwitz (P74063)
Attorneys for Plaintiff
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
    *noah@hurwitzlaw.com*

Dated: May 27, 2025

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DELONDA MCCULLUM,

       Plaintiff,         Case No.

v.

                            Hon.

UNITED WAY FOR
SOUTHEASTERN MICHIGAN,

       Defendant.

---

Noah S. Hurwitz (P74063)
Colin H. Wilkin (P86243)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
340 Beakes St. STE 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
colin@hurwitzlaw.com

---

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff, Delonda McCullum, by and through her attorneys, Hurwitz Law PLLC, hereby demands a trial by jury in the above-captioned matter for all issues triable.

                                 Respectfully Submitted,
                                 HURWITZ LAW PLLC

                                 */s/ Noah S. Hurwitz*
                                 Noah S. Hurwitz (P74063)
Dated: May 27, 2025                  *Attorney for Plaintiff*